IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

RODRICUS CARLTEZ HURST                                                              PLAINTIFF

V.                                                              CAUSE NO.: 3:12CV027-SA-SAA

LEE COUNTY, MISSISSIPPI                                                            DEFENDANT

<u>MEMORANDUM OPINION</u>

Defendant has filed a Motion for Summary Judgment [40] on the basis that Plaintiff is collaterally estopped from bringing his First Amendment cause of action in this litigation. The Court finds that judgment as a matter of law is not appropriate as the factual findings of the MDES may be entitled to preclusive effect by the Court, but that does not necessarily preclude the claim.

*Factual and Procedural Background*

Rodricus Carltez Hurst was employed as a correctional officer with the Lee County Sheriff's Department. Sheriff Jim Johnson terminated Hurst after Hurst was quoted in an article in the <u>North Mississippi Daily Journal</u>. Hurst filed for unemployment insurance benefits which the Mississippi Department of Employment Security denied. The initial determination found that Hurst was "discharged after you released information to the media without authorization from the sheriff." Hurst appealed, and the Administrative Law Judge noted that Lee County policy provided that employees were not to release any arrest information without the Sheriff's authorization, that Hurst released such information without the sheriff's permission, the information was then published in the newspaper, and Hurst admitted to his actions. The ALJ held that:

> Claimant's termination occurred because he released information to the media
> of an offender without permission from his superior, which he should have


> known not to disclose. It is the employee's responsibility to read and know the employer's policies and procedures in the employee handbook. Documentation was provided for the record by the employer. The claimant [sic] actions constitute misconduct connected with the work, as that term is defined within the Law.

Hurst did not appeal the ALJ's decision further.

Hurst filed this lawsuit alleging that the decision to terminate him was based on the content of his speech to the newspaper in violation of the First Amendment. Defendant filed a Motion for Summary Judgment asserting that the MDES findings have preclusive effect in the present action.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The court is only obligated to consider cited materials

but may consider other materials in the record. Id. at 56(c)(3). The court must resolve factual controversies in favor of the nonmovant "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Discussion and Analysis*

The Defendant asserts that the rulings by the MDES and the ALJ estop Hurst from now claiming he was terminated because of the content of his speech pursuant to the doctrine of collateral estoppel. The law is clear that "when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tenn. v. Elliott, 478 U.S. 788, 799, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986) (internal quotation marks, alteration, and citation omitted). "Under Mississippi law, res judicata or collateral estoppel precludes relitigation of administrative decisions."[1] Smith v. Univ. of Miss., 797 So. 2d 956, 963 (Miss. 2001); Zimmerman v. Three Rivers Planning & Dev. Dist., 747 So. 2d 853, 861 (Miss. Ct. App. 1999) "'Once an agency decision is made and the decision remains unappealed beyond the time to appeal, it is barred by administrative res judicata or collateral estoppel.'" A & F Prop., LLC v. Madison Cnty. Bd. Of Sup'rs, 933 So. 2d 296, 302 (Miss. 2006) (quoting Zimmerman, 747 So.

---

[1] Specifically, the decisions of the MESC are given preclusive weight in Mississippi courts, if supported by the evidence and in the absence of fraud. MISS. CODE ANN. § 71-5-531; Raiola v. Chevron U.S.A., Inc., 872 So. 2d 79, 84 (Miss. Ct. App. 2004).

2d at 861) (citing Hood v. Miss. Dep't of Wildlife Conservation, 571 So. 2d 263, 268 (Miss. 1990)).

Under the doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. Montana v. United States, 440 U.S. 147, 153, 99 S. Ct. 59 L. Ed. 2d 210 (1979); Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980). Collateral estoppel conserves judicial resources, protects parties from multiple lawsuits, and promotes confidence in judgments and comity between state and federal courts. See Allen, 449 U.S. at 94-96, 101 S. Ct. 411. Under proper circumstances, collateral estoppel can preclude relitigation of issues determined in administrative proceedings. See Miss. Employment Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist., 437 So. 2d 388, 396 (Miss. 1983); City of Jackson v. Holliday, 149 So. 2d 525, 527 (Miss. 1963).

Defendant relies heavily on Cox v. DeSoto County, Miss., 564 F.3d 745 (5th Cir. 2009) for the proposition that collateral estoppel precludes Plaintiff's First Amendment claim. In Cox, the plaintiff alleged that she was transferred from her secretarial position in the sheriff's office to a position in the jail for which she was not trained or qualified due to her age and her refusal to campaign actively for the sheriff's re-election. Plaintiff eventually filed suit on these claims, although she continued to be employed at the jail. While her first suit was pending, plaintiff made a report to her jail supervisor to the effect that she had witnessed abuse of a jailed inmate by several officers. Following an investigation by the DeSoto County District Attorney's office, it was found that no misconduct occurred and that plaintiff gave inconsistent statements about the events she allegedly witnessed. Plaintiff was terminated for giving a false report. She amended her complaint in the wrongful transfer lawsuit, contending that DeSoto County

terminated her in retaliation for filing the wrongful transfer lawsuit and that the reason given for her firing was pretextual. She later sued several individual defendants, such as the sheriff and the district attorney; that suit was consolidated with the original DeSoto County suit.

The plaintiff filed for unemployment insurance benefits, and the Mississippi Employment Security Commission ("MESC")[2] conducted a hearing and determined that plaintiff was not eligible for benefits because she was discharged for work-related misconduct. She unsuccessfully appealed to an Appeals Referee and Board of Review. She then filed an appeal in the local circuit court, which she ultimately dismissed. After the dismissal of her administrative case, the defendants in the wrongful transfer/termination case filed a motion for summary judgment contending that the collateral estoppel effect of the MESC ruling barred her termination claim in federal district court. The district judge acknowledged that the the court must accept that the Mississippi Employment Security Commission's administrative decision estops the plaintiff's termination claim.

The Fifth Circuit, on appeal, was faced – in pertinent part – with the question of whether or not the court should give collateral estoppel effect to the MESC's findings. The Court held that factual findings of the Mississippi Employment Security Commission have a preclusive effect on later claims for wrongful termination. Defendant asserts this case law completely precludes Plaintiff's First Amendment claims. However, the Court finds persuasive another district court case, issued after Cox and decided in reliance thereon, and the Court applies the rationale used in Moore v. Shearer-Richardson Mem. Nursing Home, 2012 U.S. Dist. Lexis 42519, *8 (N.D. Miss. Mar. 28, 2012).

---

[2] The Mississippi Employment Security Commission and the Mississippi Department of Employment Security are the same entity. Miss. Code Ann. § 71-5-101.

There, Angela Moore, an African American housekeeper at a skilled nursing facility, filed assault charges against her supervisor while on the clock. She was discharged the next day for leaving work without permission. The MDES initially denied Moore's claim for unemployment benefits, concluding that Moore voluntarily left her employment without good cause. Moore appealed the determination and the decision was reversed. The ALJ held that the employer discharged Moore for leaving work to file the assault charges against her supervisor. The employer appealed to the Board of Review which affirmed the ALJ's decision.

After receiving her EEOC right to sue letter, Moore filed a lawsuit alleging race discrimination, First Amendment retaliation and other state law claims. The plaintiff argued to the district court that her First Amendment retaliation claim was entitled to the preclusive weight of the MDES findings. The court examined the requirements to prove First Amendment retaliation, that the plaintiff must prove she (1) suffered an adverse employment action; (2) was engaged in a protected activity; and (3) that requisite causal relationship existed between the two, and held that the "MDES findings are preclusive as to the fact that the plaintiff suffered an adverse employment decision and that there is a causal relationship between the plaintiff's leaving to file charges and her discharge." Id. at *12. The court noted that the ALJ expressly found that "[t]he employer . . . discharged the claimant for leaving work to file these charges." Id. at *12-13. Accordingly, the court found that a question remained as to whether the plaintiff was engaged in protected activity. After analyzing Moore's actions, the court "despite giving preclusive effect to the MDES adjudication, finds that genuine issues of material fact remain on the plaintiff's First Amendment retaliation claim, and it should proceed to trial." Id. at *15.

Accordingly, the Court will give the MDES factual findings preclusive effect on Hurst's First Amendment claim:

6

1. The Lee County Sheriff's Department has a policy regarding the dissemination of information pertaining to arrests.
2. The Sheriff's Department further has a policy that failure to abide by those policies is grounds for termination.
3. Hurst received a handbook, but failed to read the entire handbook.
4. Lee County Sheriff's Department discovered Hurst released information to the media without the sheriff's permission in violation of policy.
5. Hurst admitted to releasing information to the media.
6. Hurst was terminated for violating Lee County Sheriff's Department's media policy.

There was no inquiry by the MDES into whether Hurst engaged in protected speech, only whether there was a policy in place that once violated could constitute "misconduct" under Mississippi law. The scope of the ALJ's decision was limited to whether Hurst's actions constituted "misconduct" as defined by the Mississippi Supreme Court:

> The meaning of the term "misconduct," as used in the Unemployment Compensation Statute, was conduct evidencing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of the standards of behavior which the employer has the right to expect from his employees.

Nothing in this definition allows a determination of whether the employer's policy was constitutionally deficient. Accordingly, the ALJ's determination does not preclude Plaintiff's First Amendment claims here, but those factual determinations will collaterally estop the parties from litigating those same issues.

*Conclusion*

The MDES factual determination is entitled to preclusive deference; however, the facts established by the ALJ are not dispositive the question of whether the Lee County Sheriff's

7

Department policy on communications with the media by employees is constitutionally valid under the First Amendment.

    SO ORDERED, this the 26th day of June, 2013.

                                        **/s/ Sharion Aycock**
                                        **U.S. DISTRICT JUDGE**