# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT



No. 13-60540

D.C. Docket No. 3:12-CV-27

United States Court of Appeals
Fifth Circuit
**FILED**
August 21, 2014

Lyle W. Cayce
Clerk

RODRICUS CARLTEZ HURST,

    Plaintiff - Appellant

v.

LEE COUNTY, MISSISSIPPI,

    Defendant - Appellee

Appeal from the United States District Court for the
Northern District of Mississippi, Delta Division

Before STEWART, Chief Judge, and WIENER and COSTA, Circuit Judges.

## JUDGMENT

This cause was considered on the record on appeal and the briefs on file.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that plaintiff-appellant pay to defendant-appellee the costs on appeal to be taxed by the Clerk of this Court.

ISSUED AS MANDATE: 1 2 SEP 2014

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit
By: _____
Deputy

New Orleans, Louisiana   1 2 SEP 2014

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-60540

United States Court of Appeals
Fifth Circuit
**FILED**
August 21, 2014
Lyle W. Cayce
Clerk

RODRICUS CARLTEZ HURST,

               Plaintiff-Appellant,

v.

LEE COUNTY, MISSISSIPPI,

               Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi

Before STEWART, Chief Judge, and WIENER and COSTA, Circuit Judges.

CARL E. STEWART, Chief Judge:

Plaintiff-Appellant Rodricus Carltez Hurst filed suit in federal district court alleging that Defendant-Appellee Lee County, Mississippi – acting through its Sheriff – terminated Hurst's employment in violation of his First Amendment right to free speech. The district court granted judgment as a matter of law in favor of Lee County. We affirm.

## I. FACTS & PROCEDURAL HISTORY

Hurst became employed as a corrections officer with the Lee County Sheriff's Department ("the Department") in 2008 under Sheriff Jim H. Johnson, who was first elected in 2003. Specifically, Hurst worked as a shift sergeant in Lee County Jail ("the Jail") and supervised eight other correctional

officers. The Jail provides jail space for several Lee County law enforcement agencies, including but not limited to the Tupelo, Mississippi Police Department. At the time, Sheriff Johnson's media relations policy, which was included in the Department's standard operating procedures, provided that only the Sheriff or his "designee" would be permitted to coordinate with the media with respect to crimes and investigations. Non-designees were permitted to reveal certain "public information" to the media which included the limited information entered on the Department's docket book and website. According to the record, Hurst had spoken with members of the media numerous times during the course of his employment with the Jail.

In 2012 on New Year's Day, Hurst arrived at the jail to begin his shift and learned that Chad Bumphis, a Mississippi State University football player, had been arrested the night before by the Tupelo Police Department. That day, numerous media representatives telephoned the Jail seeking information about Bumphis's arrest; Hurst fielded many of those calls. At one point during that day, Brad Locke, a sports writer for the *Northeast Mississippi Daily Journal* (*NMDJ*), travelled to the Jail and questioned Hurst about the incident that happened the night before involving Bumphis. Later that day, Locke published an article in the *NMDJ* in print and online about the arrest of Bumphis, attributing certain quotes in the articles to Hurst. One article quoted Hurst as saying that "[w]hen the fight broke out, they [*i.e.*, the Tupelo Police Department] started taking people to jail."

Sheriff Johnson read the articles and directed that Hurst be interviewed by Department personnel with regard to the statements. Hurst acknowledged that he had talked to the reporter and wrote out a statement which provided in part: "I told the reporter from what I had heard a group fight had broke out and somehow he [Bumphis] got cut on the neck." Upon reading Hurst's written

statement, Sheriff Johnson fired Hurst for violating the Department's media relations policy.

Following his termination, Hurst applied for and was denied unemployment benefits by the Mississippi Department of Employment Security ("MDES").[1] The MDES determined that Hurst was discharged after wrongfully releasing information to the media without authorization from the Sheriff. Hurst appealed and an Administrative Law Judge ("ALJ") also held that Hurst had wrongfully released information to the media without authorization from the Sheriff in violation of the Department's media relations policy. Hurst then brought suit in the United States District Court. Lee County filed a motion for summary judgment on the grounds that the findings of the MDES and the ALJ should have a preclusive effect on the district court proceedings. The district court denied the motion in part and granted the motion in part and held that "[t]he MDES factual determination is entitled to preclusive deference; however, the facts established by the ALJ are not dispositive [of] the question of whether Lee County Sheriff's Department policy on communication with the media by employees is constitutionally valid under the First Amendment."

The case proceeded to jury trial and, at the close of Hurst's case in chief, Lee County filed a Rule 50 motion for judgment as a matter of law. FED. R. CIV. P. 50(a). Relying primarily on this court's holding in *Nixon v. City of Houston*, 511 F.3d 494 (5th Cir. 2007), the district court ruled from the bench and granted the motion in favor of Lee County. The court's ruling stated that: (1) Hurst spoke to the reporter as an employee of the Sheriff's Department as part of his official job duties; and (2) any part of the speech Hurst engaged in

---

[1] Also known as the Mississippi Employment Security Commission. *See* Miss. Code Ann. § 71-5-101.

No. 13-60540

with Mr. Locke that would not be considered part of his official job duties – therefore speech engaged in as a private citizen – was nevertheless unprotected because it was not of "public concern." Hurst appeals herein.

## II. STANDARD OF REVIEW

"We review the district court's grant of judgment as a matter of law de novo, applying the same legal standards as the district court." *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 474 (5th Cir. 2012). Judgment as a matter of law may be granted when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). In reviewing the district court's grant of judgment as a matter of law, we "consider all of the evidence in the light most favorable to the nonmovant, drawing all factual inferences in favor of the non-moving party, and leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury." *Gonzalez*, 689 F.3d at 474-75.

## III. DISCUSSION

### A. First Amendment Speech

Hurst's first argument on appeal is that the district court erroneously granted Lee County's Rule 50 motion because Hurst's speech was not employee speech pursuant to his job duties and should have been considered citizen speech protected by the First Amendment. We disagree.

While government employees are not stripped of their First Amendment right to freedom of speech by virtue of their employment, this right is not without exception. *Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968). A four-pronged test is used to determine whether the speech of a public employee is entitled to constitutional protection from employer discipline. *See Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir.

4

2011). A plaintiff must establish that: (1) he "suffered an adverse employment decision"; (2) his "speech involved a matter of public concern"; (3) his interest in speaking outweighed the governmental defendant's "interest in promoting efficiency"; and (4) "the protected speech motivated the defendant's conduct." *Id.*

The Supreme Court noted in *Garcetti v. Ceballos* that, for an employee's speech to qualify for First Amendment protection, he must be speaking "as a citizen on a matter of public concern." 547 U.S. 410, 418 (2006). This court has characterized that requirement – that he be speaking as a citizen on a matter of public concern – as a "threshold layer" to the second prong of the retaliation test. *See Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008). *Garcetti* further states that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. In the past, we have acknowledged that *Garcetti* does "not explicate what it means to speak 'pursuant to' one's 'official duties.'" *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 424).

More recently, however, the Supreme Court expounded upon this issue in *Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014). In *Lane*, the Court reasoned that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* The Court ultimately held in that case that the First Amendment "protects a public employee who provide[s] truthful sworn testimony, compelled by subpoena, outside the course of his ordinary job responsibilities." *Id.* at 2374-75.

5

No. 13-60540

When a court determines that an employee is not speaking as an employee, but rather as a citizen on a matter of public concern, "the possibility of a First Amendment claim arises." *Garcetti*, 547 U.S. at 418. To then determine whether the employee's speech is entitled to First Amendment protection, the court proceeds to the *Pickering* balancing test, which inquires as to whether the interest of the government employer "in promoting the efficiency of the public services it performs through its employees" outweighs the employee's interests, as a citizen, "in commenting upon matters of public concern." *Pickering*, 391 U.S. at 568. In performing this balancing test, the court looks at "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

Here, Hurst was an officer who, according to the Department's media relations policy, could have obtained authorization from his superiors to speak to the media about the event involving Bumphis that took place while Hurst was off duty the night before.[2] He chose, however, to make statements to the media without obtaining that authorization and was ultimately terminated for doing so. Hurst argues on appeal that his job duties were limited to supervising his subordinate officers and keeping the officers and inmates safe. However, Sheriff Johnson's media relations policy states that employees like Hurst were authorized to field calls from the media - such as the numerous

---

[2] We note herein that the fact that Hurst first learned of Bumphis's arrest upon arriving to begin his shift at the Jail is not dispositive of the question of whether his speech to the reporter about the arrest was employee speech. *See Lane v. Franks*, 134 S. Ct. 2369, 2379 (2014) (stating that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech.").

6

No. 13-60540

calls Hurst fielded on January 1, 2012 - and to provide certain limited information when doing so. If Hurst was not authorized as a designee to speak on a specific issue about an arrest, he was permitted to provide certain publicly available information to the media such as the name of the arrestee, the charge, the amount of the arrestee's bond, and whether the Department had released the arrestee. Further, the Sheriff at his discretion could have authorized Hurst as his designee to make other statements to the media. Hurst did not obtain that authorization before making the statements at issue to the news reporter.

Accordingly, we hold that Hurst's statements to the news reporter, *i.e.*, the speech at issue, was "ordinarily within the scope of [Hurst's] duties" and did not "merely concern those duties." *Lane*, 134 S. Ct. at 2379.[3] Thus, Hurst was not speaking as a citizen for First Amendment purposes, and consequently his communications were not constitutionally insulated from employer discipline. *Garcetti*, 547 U.S. at 421. Moreover, because we have held Hurst's speech to be ordinarily within the scope of his duties and therefore not citizen speech protected by the First Amendment, we do not reach the issue of whether Hurst's speech involved "a matter of public concern." *Garcetti*, 547 U.S. at 418; *Juarez*, 666 F.3d at 332.

### B. Duty to Investigate

Hurst's second argument on appeal is that the Rule 50 motion was erroneously granted because the Sheriff violated his duty to conduct a reasonable investigation to determine whether Hurst had engaged in protected speech when speaking with the news reporter. *See Waters v. Churchill*, 511

---

[3] In another case involving a law enforcement official making an unauthorized comment to the media, we concluded that the statement was "not protected by the First Amendment because it was made pursuant to his official duties and during the course of performing his job." *Nixon v. City of Houston*, 511 F.3d 494, 498 (5th Cir. 2007).

7

U.S. 661, 677-80 (1994). In light of our foregoing conclusion that Hurst's speech to the news reporter was not protected First Amendment speech, we pretermit discussion of Hurst's argument that Sheriff Johnson violated his duty to conduct a reasonable investigation under *Waters* prior to terminating Hurst's employment. *See id.*

## IV. CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court granted in favor of Defendant-Appellee Lee County, Mississippi.